## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**GARRY LEE GANDEE,**

      **Plaintiff,**

**vs.**                                          **CIVIL ACTION NO. 2:16-CV-06767**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered August 3, 2016 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 14 and 15.)

The Plaintiff, Garry Lee Gandee (hereinafter referred to as "Claimant"), protectively filed his applications for DIB and SSI on August 7 and August 8, 2014, respectively, alleging disability since June 27, 2014[2] due to "coronary artery disease, COPD, hypertension, degenerative disc

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The alleged onset date reflects the day after an adverse decision by the adjudicator. (Tr. at 13.)

disease, insomnia, depression, anxiety, degenerative joint disease, chronic pain disease, and ankle problems".[3] (Tr. at 259.) His claims were denied initially on November 5, 2014 (Tr. at 153-157, 158-162.) and again upon reconsideration on January 27, 2015. (Tr. at 165-171, 172-178.) Thereafter, Claimant filed a written request for hearing on March 2, 2015. (Tr. at 179-180.) On October 30, 2015, an administrative hearing was held before Administrative Law Judge ("ALJ") Sabrina M. Tilley. (Tr. at 32-62.) By decision dated March 10, 2016, the ALJ determined that Claimant had not been under a disability since June 27, 2014 through the date of the decision. (Tr. at 10-31.) On April 5, 2016, Claimant requested review by the Appeals Council of the ALJ's unfavorable decision. (Tr. at 6-9.) The ALJ's decision became the final decision of the Commissioner on June 3, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-5.) On July 28, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

---

[3] In his Disability Report – Appeal, dated March 2, 2015, Claimant alleged that since his last Disability Report dated December 23, 2014, he experienced "increased anxiety, panic attacks, and dizziness. Increased chest pain. Pain in back and neck has increased – radiating, numbness, tingling, in addition to decreased range of motion." Claimant further alleged that he had "[s]leeplessness, forgetfulness, and irritability. Problems concentrating. Increased need to lie down. Increased difficulty with lifting, swatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. Uses a cane and a shower chair." (Tr. at 299.)

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Those

sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional
> limitations is a complex and highly individualized process that requires us to
> consider multiple issues and all relevant evidence to obtain a longitudinal picture
> of your overall degree of functional limitation. We will consider all relevant and
> available clinical signs and laboratory findings, the effects of your symptoms, and
> how your functioning may be affected by factors including, but not limited to,
> chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors
> we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C
> of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or
> pace), we will use the following five-point scale: None, mild, moderate, marked,
> and extreme. When we rate the degree of limitation in the fourth functional area
> (episodes of decompensation), we will use the following four-point scale: None,
> one or two, three, four or more. The last point on each scale represents a degree of
> limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work

4

activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).[4] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2015. (Tr. at 16, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

gainful activity between the alleged onset date, June 27, 2014. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: coronary artery disease status post stent placement; degenerative disc disease of the cervical and lumbar spine with paresthesia in both legs; borderline intellectual functioning; major depressive disorder; pain disorder; and anxiety with panic attacks. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light work as defined in the Regulations

> He can lift 20 pounds occasionally and 10 pounds frequently. He can stand and walk for 6 hours in an 8-hour workday and could sit for 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel[,] crouch and crawl. He can tolerate occasional exposure to extreme cold, extreme heat, vibrations, fumes, odors, dusts, gases, and poor ventilation. He can tolerate no exposure to hazards. He retains the capacity to understand[,] remember[,] and carry out simple tasks[,] and can respond appropriately to occasional interaction with coworkers and supervisors. He should have no interaction with the general public. He can make an adjustment to occasional changes in a work routine. (Tr. at 18, Finding No. 5.)

At step four, the ALJ found that Claimant was incapable of performing his past relevant work. (Tr. at 23, Finding No. 6.) At the fifth step, the ALJ found that Claimant was 50 years old on the alleged onset date, making him an individual closely approaching advanced age; that he had at least a high school education and could communicate in English; that the transferability of job skills was immaterial to the determination of disability; and that Claimant's RFC, age, education and work experience, there are other jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. at 23-24., Finding Nos. 7-10.) On this basis, the ALJ determined

Claimant was not under a disability from June 27, 2014 through the date of the decision. (Tr. at 24, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was 50 years old on the alleged onset date, defined as an individual "closely approaching advanced age". See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 255.) Claimant had not worked since his alleged onset date. (Tr. at 260.) Claimant had previous claims for DIB and SSI, which were denied by decision dated June 26, 2014 by ALJ Tilley. (Tr. at 63-80.) Claimant filed new claims and had no objection to having the same ALJ hear the instant applications for

disability. (Tr. at 34.)

Issues on Appeal

The main argument concerns whether the RFC assessment is supported by substantial evidence when the ALJ failed to consider if Claimant's prescribed can was a medical necessity or how it affected his capability to perform light work. (Document No. 14 at 5.)

The Relevant Evidence of Record[5]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

The Medical Evidence Related to Claimant's Ambulation:

An MRI of Claimant's lumbar spine in February 2012 showed bulging discs at L4-5 and L5-S1 with mild neural foraminal encroachment, no disc herniation at any level or any high-grade spinal stenosis. (Tr. at 326.) On June 20, 2012, Dr. Paul Nielsen prescribed Claimant a cane; the prescription did not specify why the cane was needed or for how long. (Tr. at 727.)

A March 2013 x-ray of Claimant's lumbar spine showed mild degenerative changes at L5-Sl, no compression fracture or spondylosis, and no ligamentous instability on flexion or extension. (Tr. at 334.) December 2013 x-rays of Claimant's lumbar spine showed mild degenerative changes at L5-S1. (Tr. at 336.)

On October 22, 2014, Claimant had a consultative examination with Kip Beard, M.D. (Tr. at 373.) Claimant reported issues with his neck, and middle and lower back for the last four and a half years which were related to a prior fall. (Tr. at 373-374.) He reported that his prior treatments for these issues consisted of medications and physical therapy. (Id.) Claimant graded the pain

_____

[5] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

related to his back and neck at 6-7/10, and reported numbness and weakness in his legs. (Id.) Claimant also reported some joint pain in his shoulders, hips, ankles and feet, but noted no joint swelling. (Id.) He reported that he can sit for half an hour, stand for 20 minutes, walk for 20 minutes and lift 5 pounds. (Id.) Dr. Beard noted that Claimant presented with a cane, but assessed that he is able to ambulate without the need for a cane. (Tr. at 375.) He observed that Claimant's gait was slightly limping on the left and generally stiff, but was not unsteady or unpredictable. (Id.) Dr. Beard further noted that Claimant was able to stand unassisted, arise from a seat, and step up and down from the exam table without obvious difficulty, but with discomfort. (Id.)

Upon examination of Claimant's cervical spine, Dr. Beard noted that he experienced mild pain with range of motion testing with paravertebral tenderness. (Tr. at 376.) He further noted that there was no spasm, Claimant's extension was 60 degrees, bending was 35 degrees to the left, and he had a normal range of motion. (Tr. at 375-376.) Evaluation of Claimant's knees showed no limitation in his range of motion. (Tr. at 376.) Dr. Beard noted that an examination of Claimant's dorsolumbar spine revealed slight rightward thoracic scoliosis, and that Claimant had complaints of moderate discomfort on motion testing with paravertebral tenderness, but had no spasm. (Tr. at 376-377.) He also observed that Claimant's forward bending was 70 degrees with normal range of motion discomfort, and that Claimant could stand on one leg alone without difficulty. (Id.) Claimant's straight leg raising test was to 90 degrees bilaterally with some back discomfort and the supine straight leg raising test was to 60 degrees bilaterally with back discomfort. (Id.) Although Claimant's hips had some mild pain with range of motion testing, they had normal motion on both sides. (Id.) On neurologic examination, there was no evidence of weakness on manual muscle testing and Claimant's sensation appeared intact. (Id.)

Regarding Claimant's joints, Dr. Beard noted that there were areas of discomfort with range of motion, abnormalities about the shoulder, but no inflammatory arthritis. (Tr. at 377.) An x-ray showed left hip degenerative joint disease. (Tr. at 377-378.) Dr. Beard noted that a thoracic MRI demonstrated that Claimant had disc osteophyte complex at C5-C6 producing central canal stenosis. (Id.) In terms of Claimant's neck and back, Dr. Beard noted motion abnormalities with discomfort, but no obvious neurologic compromise. (Id.)

In September 2014, an MRI of Claimant's lumbar spine showed no significant changes from his February 2012 MRI, and there were no acute findings. (Tr. at 551-552.) A November 2014 EMG of Claimant's lower extremities was normal. (Tr. at 385.)

On November 3, 2014, state agency physician Rogelio Lim, M.D., reviewed Claimant's records and assessed that Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour day; sit about 5 hours in an 8-hour day; and although he could never climb ladders, ropes or scaffolds, he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. (Tr. at 91-92.) He further assessed that Claimant should avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, dusts, odors, gases, poor ventilation and hazards. (Tr. at 92.) Dr. Lim specifically opined that Claimant could walk without a cane. (Id.)

On December 3, 2014, an MRI of Claimant's cervical spine showed marked discogenic spondylosis with broad posterior disc-spur complex, which resulted in mild central canal stenosis and moderate to marked bilateral foraminal narrowing. (Tr. at 541.) On January 27, 2015, state agency physician Cindy Osborne, D.O., reviewed Claimant's records and assessed that he could perform a range of light work. (Tr. at 125-127.) Dr. Osborne assessed that Claimant could lift

and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day; and although he could never climb ladders, ropes or scaffolds, he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. (Tr. at 126.) With regard to the standing, walking, sitting, lifting and carrying limitations, Dr. Osborne noted that Claimant had a history of ankle and foot pain with a brace, and although Claimant had a limp, he had no assistive device. (Id.) Dr. Osborne further assessed that Claimant should avoid concentrated exposure to extreme temperatures, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, as well as hazards such as machinery and heights. (Tr. at 127.)

In January 2015, Claimant underwent internal fixation, decompression, and discectomy at C5- C6 in his lumbar spine. (Tr. at 474-475.) By February 2015, neurological records indicated that Claimant was doing well postoperatively, and he was instructed to wear a soft cervical collar for two weeks. (Tr. at 568.) On February 4, 2015, Claimant treated with Arif Malik, M.D., reporting no joint and neck pain. (Tr. at 651.) Dr. Malik instructed Claimant to resume activities of daily living as tolerated and that he should do his exercises three times per week for 20-30 minutes; he restricted his activities for three to six weeks. (Tr. at 651-652.) On March 3, 2015, Claimant reported that pain medication helped his back pain; upon examination, Claimant was in no acute distress, his extremities showed no clubbing, cyanosis, or edema, and his peripheral pulses were equal. (Tr. at 657.)

On April 14, 2015, Claimant presented to Gregory Deramo, M.D. with complaints of back and neck pain; his gait was normal. (Tr. at 698, 702.) Claimant reported that he was taking no medications for pain. (Tr. at 700.) Dr. Deramo observed that Claimant had no difficulty with ambulation and that his mobility was normal. (Tr. at 701.)  Claimant had normal range of motion

in his cervical spine, non-painful range of motion in his thoracic spine, but painful range of motion in his lumbar spine. (<u>Id</u>.) Claimant had positive straight leg raising tests, and normal range of motion in his upper extremities. (<u>Id</u>.) Claimant's extremities and neck had a normal appearance, with no edema in his extremities. (Tr. at 702.) Dr. Deramo assessed lumbar radiculitis and degenerative disc disease of the lumbar spine, and recommended epidural injections. (<u>Id</u>.)

<u>The Administrative Hearing</u>

<u>Claimant Testimony:</u>

Claimant testified that he had not worked since his alleged onset date. (Tr. at 35-36.) He described pain, stiffness, and restriction in his neck despite undergoing a cervical fusion and participating in physical therapy. (Tr. at 36-38.) He stated his neck pain worsened after surgery and he also developed "tingling, like needles" in both arms. (Tr. at 36, 38, 40.) He indicated pain medications sometimes helped at night, but he was still unable to bend or lift anything more than a gallon of milk without exacerbating his neck symptoms. (Tr. at 39, 44-45.) Claimant stated he used a hot water bottle, heating paid, and pain lotion that provided temporary relief from his neck pain (Tr. at 39.) and another medication for temporary relief of the tingling in his arms. (Tr. at 40.)

Claimant testified he had pain in his lower back that radiated down both legs with a pins-and-needles sensation and numbness. (Tr. at 41.) He described throbbing pain in his tailbone "like a toothache" that also radiated through both legs. (<u>Id</u>.) Claimant stated he had received epidural shots, but these did not provide any relief. (<u>Id</u>.) He stated he was not receiving care at the time of the hearing because "there's not really anything else they can do." (<u>Id</u>.) Claimant indicated his back pain interfered with his ability to stand or sit for long periods of time and to bend down. (Tr. at 42.) He indicated he could stand approximately 10 to 15 minutes and sit for 5 to 10 minutes at

a time before needing to change position to alleviate his pain and tingling symptoms. (Tr. at 43.) Claimant also testified he could walk about 25 to 30 feet to his mailbox with a cane. (Tr. at 45.) He did not believe he could walk any farther because of shortness of breath and panic attacks. (Tr. at 45-46.)

Claimant confirmed he attended his hearing with a cane and stated that he used the cane every time he needed to stand or walk. (Tr. at 43-44.) He stated the cane had been prescribed by his foot doctor, and he had been using his cane for three to four years. (Tr. at 44.) Claimant also stated he experienced cramping in his feet and had to wear a brace on his left foot for stability and to prevent twisting. (Tr. at 47-48.)

Claimant testified that he lived in a camper behind his sister's house and that he did not engage in hobbies or activities except watching television. (Tr. at 52-53.) He stated he had to sit in a chair to wash himself, and his sister washed his hair and his feet since he could not bend. (Tr. at 53-54.) Claimant stated he could prepare a simple meal in a microwave, but his sister cleaned his camper and went to the grocery store for him. (Tr. at 54-55.)

Patricia McFann, Vocational Expert ("VE") Testimony:

The VE testified that Claimant's past relevant work as a painter was at the skilled, medium exertional level, and provided no transferable skills. (Tr. at 55-56.) She confirmed that a hypothetical individual with Claimant's vocational profile and controlling RFC would be unable to perform his past work but could perform other light occupations in the national economy, such as hand packer (light and unskilled); mail clerk (light and unskilled); and machine operator (light and unskilled). (Tr. at 56-58.) The VE indicated there would be no work available to an individual who was off task 15 to 20 percent of the day (Tr. at 58.) or could not use their neck. (Tr. at 61.)

The VE further testified that the individual would be unable to perform light work if he needed to us one hand to use a cane to walk or even to stand. (Tr. at 59.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant contends that the ALJ's error concerns her failure to consider or analyze whether there was medical necessity for his use of a cane, and then compounded that error when she did not include this limitation in the hypothetical to the VE, rendering his RFC to unskilled light work unsupported by substantial evidence, because that work requires the use of Claimant's hands and arms. (Document No. 14 at 6-7.) Had the ALJ included Claimant's use of his cane, he would have been relegated to unskilled sedentary work, and therefore disabled under Medical-Vocational Rule 201.04. (<u>Id</u>. at 7-8.) Because the ALJ did not explain how Claimant could perform light work, meaningful review is frustrated, requiring this case to be remanded. (<u>Id</u>. at 8.)

In response, the Commissioner states that Claimant did not carry his burden of proof that the cane was medically necessary, and his allegations that he used his cane regularly were not supported by the medical evidence of record, therefore the RFC assessment limiting him to light work was supported by substantial evidence. (Document No. 15 at 11-13.) The Commissioner asks the Court to affirm her final decision. (<u>Id</u>. at 14.)

In reply, Claimant argues that the Commissioner failed to address the real issue at bar, which is that the ALJ failed to abide by her Regulatory duty to consider the evidence of Claimant's cane use, and to craft an appropriate RFC that included this limitation; the ALJ's failure to do this analysis rendered an improper RFC that prejudiced Claimant. (Document No. 16 at 1-4.)

<u>Analysis</u>

At steps four and five of the sequential analysis, the Regulations mandate that an ALJ must

determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545, 416.945. "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1546, 416.946.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

> Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels

of work." <u>Id</u>. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. <u>Id</u>. The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" <u>Id</u>. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." <u>Id</u>. (<u>Citing</u> <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)).

In this case, the ALJ gave "great weight" to the RFC found by the prior ALJ (herself), reasoning that there was "little indication of change in the claimant's condition."[6] (Tr. at 13.) The prior RFC also limited Claimant to light work; the only difference between the two RFCs is that the instant RFC limits Claimant to no exposure to hazards, whereas previously, the ALJ found he could tolerate occasional exposure to hazards. (Tr. at 18, 72.) Interestingly, during the prior administrative proceeding, Claimant's representative asked the VE if hypothetically, Claimant required the use of a cane in his dominant right hand for sitting and walking, the VE responded that the jobs named could still be performed.[7] (Tr. at 79.) Further, during the previous administrative proceeding, the ALJ acknowledged evidence of Claimant's cane use in her written decision. (Tr. at 75, 77, 79.)

---

[6] The ALJ appropriately weighed the prior RFC pursuant to <u>Albright v. Commissioner of the Social Security Administration</u>, 174 F.3d 473 (4th Cir. 1999). (Tr. at 13.)

[7] The undersigned notes that the previous impartial vocational expert was Olen Dodd. (Tr. at 66.)

However, in the instant matter, the ALJ does not acknowledge any evidence pertaining to Claimant's cane use; of further interest is that the VE testified in the instant proceeding that Claimant would be *precluded* from light work[8] if he required the use of his cane in one hand. (Tr. at 59.) In short, this evidence was clearly relevant, and the ALJ was duty-bound to discuss this evidence in her written decision when she found Claimant was capable of performing light work despite the contradictory evidence elicited from the VE during the hearing. Mascio, 780 F.3d at 636. The ALJ's failure to reconcile this evidence in support of her conclusions "frustrate[s] meaningful review", accordingly, the decision is not supported by substantial evidence. Id.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's Motion for Judgment on the Pleadings (Document No. 14.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order to correct the errors identified *supra*.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written

---

[8] Sections 404.1567(b) and 416.967(b) state that light work . . . "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: February 7, 2017.

Omar J. Aboulhosn
United States Magistrate Judge